CHOCTAW, OKLAHOMA & GULF R. R. CO. v. TONY ALEXANDER.

(Filed July 30, 1897.)

1. STATUTES—Construction—Title of Act. The title of an act of the legislature will be looked to as one of the means of discovering the purport of a doubtful act, but this will only be in cases of ambiguity and uncertainty in the provisions of the act, and, if need be, to aid in its construction, but it will never be held to control the plain and unambiguous meaning of a statute, nor to explain or restrain its positive provisions.

2. DAMAGES—Fires—Railroads—Act of Legislature. The legislature of the Territory passed "An Act to Regulate Prairie Fires," consisting of eight sections. (St. 1893, ch. 37.) The title designated the principal purpose of the act, but the last clause of the last section of the act provided that "any railroad company operating any line in this Territory shall be liable for all damages sustained by fire originating from operating their road." This provision is not ineffective by reason of more than one subject being contained in the act, since there is no inhibition to that effect in the Organic Act, and since the act itself became effective on December 11, 1890, and there was no inhibition against more than one subject being treated of in an act of the legislature until a subsequent act passed on December 25, 1890, which cannot be construed to abrogate the former, or in any manner lessen its force or effect.

3. SAME—*Due Process of Law.* The last clause of the last section of c..apter 37 of the Statutes of 1893 for this Territory, entitled, "An Act to Regulate Prairie F..res," which reads that "any railroad company operating any line in this Territory shall be liable for all damages sustained by fire originating from operating their road," does not violate the co s itution of the United States, as d priving the railroad company of its property without due process of law, or as denying to it equal protection of the laws, and provides a liability for injuries sustained, as stated in the act, although no negligence be shown on the part of the railroad company.

4. MEASURE OF DAMAGES—*Rule Applied.* In this case, the business of the plaintiff having been destroyed by fire under the conditions stated in the act, and having recovered judgment against the ra l-road company, the measure of his damages would properly cover gains prevented as well as losses sustained, the injury having left the real estate, (one of the factors or ingredients of the busin ss which the plaintiff was carrying on,) in the possession of the plaintiff, and in a condition in which his business may be restored.
(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before J. R. Keaton, District Judge.*

*J. W. McLoud,* for plaintiff in error.

*Amos Green & Son,* for defendant in error.

### STATEMENT OF FACTS.

Action by Tony Alexander against the Choctow, Oklahoma & Gulf Railway Company. A demurrer to the answer was sustained, and defendant brings error. Affirmed.

The plaintiff, defendant in error here, brought suit against the Choctaw, Oklahoma & Gulf Railroad company, to recover damages, upon the first cause of action, for destroying hay and corn valued at $185, by permitting fire to escape from the engine of the company. The fire communicated with the premises of plaintiff, and then and there burned and destroyed his property. The second cause of action is for burning and destroying hay,

corn, and buildings in which the plaintiff was conducting a wagon and feed yard, and that his business had thereby been wholly broken up and destroyed, and that it had been paying him $2 per day, and a period of fifty days would reasonably be required to restore the building and bring his business back to its normal condition before the wrongs complained of were done, and he claimed the sum of $100 on that account. The defendant demurred to the first cause of action: (1) Because the petition did not charge negligence or allege that the fire complained of was caused by any defect in the engine, machinery, or appliances of the defendant, or was caused by the negligence of the defendant; and (2) because chapter 37 of the Statutes of 1893, entitled "An Act to Regulate Prairie Fires," is not applicable here to fires caused by sparks from engines on railroad trains, and does not apply to the facts set forth in the first and second counts of the petition, and because the damages sought to be recovered under the second count of the amended petition are too remote, uncertain, contingent, and speculative to entitle the plaintiff to recover. Upon hearing, the demurrer was overruled, and the defendant, answering, admitted the escape of sparks of fire, which were carried by the wind to the hay of the plaintiff, which had been stacked by the plaintiff adjacent to the right of way of the railroad, and had set fire to the same, and burned the hay, corn, shed building, and fencing, as averred in the first and second counts of the petition, but averred that its engine was of the most approved make and construction, was in good condition, with all appliances for preventing the escape of fire, that the engineer and fireman were competent and skillful, and the defendant in no respect negligent, and the escape of the

fire which burned the property was purely accidental and unavoidable. A demurrer to both counts of this answer that they were insufficient to constitute a defense was sustained, and final judgment entered thereon against the railroad company.

Opinion of the court by

McATEE, J.: The principle question presented was whether a railroad company lawfully engaged in running its trains in Oklahoma Territory is liable for damages by fire originating from its engines, in a case where it is conceded that the railroad company was not negligent, and that the engine from which the fire escaped was perfect in construction and condition, with all appliances of the latest and most approved pattern to prevent the escape of fire, and the engine managed by a skillful and competent engineer and fireman, and the fire conceded to be purely accidental and unavoidable.

If the defendant was liable, it is agreed that it was by reason of the provision in chapter 37 of the Statutes of Oklahoma of 1893, which is entitled "An act to Regulate Prairie Fires." The act itself consists of about two pages of matter prescribing the punishment of persons who shall "set out or cause to be set a fire in woods, marsh or prairie," and prescribing the punishment and responsibility therefor. The act is composed of eight sections, neither of which relates in any manner to railroads, with the exception of the last clause of the eighth section, the total provision of which, so far as it would entitle the plaintiff to recover, is that "any railroad company operating any line in this Territory, shall be liable for all damages sustained by fire originating from operating their road."

It is contended by the plaintiff in error that (1) the pro-

vision does not apply, and can not be made to apply, to railroad companies; and (2) that, if it does apply to railroad companies, it does no more than express the common law doctrine, which would only hold the defendant company liable for fire caused by its negligence, and does not deprive the railroad company of the defense that it was free from negligence, and hence is not liable; and, in any case it does nothing more than make the fact of fire *prima facie* evidence.    It is argued in support of this proposition that the whole of the act must be used and considered together, and, inasmuch as the whole act provided only for the suppression of prairie fires, and it was so entitled, that it could not be construed to regulate any other kind of fires.    It is true that the title will be looked to as one of the means of discovering the purport of a doubtful act, but this will only be when, as was said by Chief Justice Marshall, "the mind labors to discover the design of the legislature.    It seizes everything from which aid can be derived, and in such a case the title will claim a degree of notice, and will have its due share of consideration."    (*U. S. v. Fisher*, 2 Cranch, 386.)

And it has been held in a multitude of cases that the title may be looked to for explanation, and may be regarded as a fair aid to the interpretation of the purpose of the legislature.    But this cannot be so when the legislature plainly speaks, and when there is no doubt, for it has been uniformly held, although the title may be consulted to aid in the interpretation of the body of an act, yet it will only be in cases of ambiguity and uncertainty in the provisions of the act, and, if need be, to aid its construction, and it will never be held to control the plain and unambiguous meaning of the statute, nor to explain or restrain its positive provisions; so that, even

in the interpretation of a penal law, if the words of the enacting clause are broader than the title, the former must govern. (*In re Boston Min. Co.*, 51 Cal. 624; *U. S. v. Fisher*, 2 Cranch, 386; *Hadden v. Collectors*, 5 Wall. 107; Endl. Interp. St. sec. 59; Black, Interp. Laws, p. 173.)

While in our teritorial condition, we have no governing constitutional provision to the effect that no act shall have more than one subject, which shall be clearly expressed in its title, it is held by the plaintiff in error here that the provision of the Oklahoma legislature, (section 3122 of the Statutes,) that "no bill shall contain more than one subject and matters properly connected with it, which subject shall be clearly expressed in the title," ought to be governing provision in this case, and that inasmuch as, in the "Act to Regulate Prairie Fires," the legislature has undertaken to provide an absolute liability against the railroad company for damages, without regard to the negligence existing in the cause of the loss, two subjects are herein provided for, and that the act will be, as to the later and minor subject at least, void. The act to regulate prairie fires was passed on December 11, 1890, and the act providing that no bill shall contain more than one subject and matters properly connected with it, became a law on December 25. 1890, so that, at the time the former act went into effect, the latter was non-existent. It cannot be construed to abrogate the former, or in any manner lessen its force and effect. And the question then remains, whether it is in the power of the legislature to create an absolute liability by such legislation, and whether such a provision is not inconsistent with the rights of the railroad company, in excluding the question of negligence, and making the provision for liability absolute.

While two or three authorities are cited against the proposition by the plaintiff in error, the whole question has been recently considered in the supreme court of the United States, upon a like statute. In 1887 the legislature of Missouri enacted that "each railroad corporation owning or operating a railroad in this state shall be responsible in damages to every person and corporation whose property may be injured or destroyed by fire, communicated directly or indirectly by locomotive engines in use upon the railroad owned or operated by such railroad corporation, and each such railroad corporation shall have an insurable interest in the property, upon the route of the railroad owned or operated by it, and may procure insurance thereon in its own behalf for its protection against such damages." (Rev. St. 1889, sec. 2615.)

A case upon this question came before the supreme court in the case of *Mathews v. Railroad Co.*, 24 S. W. 591. It was an action against a railroad company of a similar character to the present, seeking to place upon it an absolute liability notwithstanding the absence of negligence. Counsel for the railroad company strongly contended that the statute was unconstitutional, (a) in impairing the obligation of the contract contained in the defendant's charter, and (b) in denying the defendant equal protection of the laws, and (c) in taking the defendant's property without due process of law. The supreme court of that state held the act valid, saying that the statute created an absolute liability. A very careful and full opinion was pronounced by the supreme court of that state, (Gantt, J.,) in which all the authorities were carefully reviewed, and in which it was pointed out that the supreme courts of a great majority of the states have,

upon a similar statute, held to the doctrine of absolute
liability, although no negligence was alleged or proved.
The argument for this position was based upon the pe-
culiar danger of fire, the court saying that, as we have
seen, the liability at common law is absolute, and that
different states in the Union have re-enacted that com-
mon law by which the owner is now absolutely liable
for damages by fire put out on his own premises. "Look-
ing for the reason underlying the ancient rule of law, we
find that it had its origin in the dangerous character of
fire, and that whosoever put this dangerous agency in
motion was rightfully required to see that it did no harm;
that, while it was an elementary principle that every
individual is entitled to the undisturbed possession and
lawful enjoyment of his own property, the mode of en-
joyment was necessarily limited by the rights of others;
otherwise, it might result in the destruction of their
rights altogether; hence the maxim, '*Sic utere tuo ut
alienum non laedas*'. So that, while it has been gen-
erally held that one is only liable for negligence in the
prosecution of a lawful business, nothing is more firmly
settled than that a man cannot erect a nuisance or em-
ploy dangerous agencies, to the annoyance of an adj..in-
ing proprietor, even for the purposes of lawful trade;
and it was an old common law maxim that, where one
of two innocent persons must suffer loss from an act done,
it is just that it should fall on the one who occasioned the
injury, rather than upon the one who had no agency in
producing the damage." And it was further said that
"we think it clear, on the plainest principles of justice,
it ought to be liable, and that, when experience demon-
strated the dangerous character of the locomotive engine
in setting out fires, it was not only right, but the mani-

fest duty of the legislature, to hold the railroads liable for fires set out by them, without reference to whether they were guilty of negligence or not.  Nor do we think there is any force in the argument that, by so doing, their property is arbitrarily taken without right.  The right to compel them to respond is based upon their use of a dangerous element, and by their destruction of adjoining proprietor's property.  The wrong done by the dangerous agency, set in motion by the company and under its control, is ample consideration for the compensation it is required by the statute to make to the owner whose property is destroyed."  The case went up to the supreme court of the United States, and was passed upon at the October, 1896, term in the case of *Railroad Co. v. Mathews*, 165 U. S. 1, 17 Sup. Ct. 243, the court saying that "a statute of a state which enacts that every railroad corporation owning or operating a railroad in the state shall be responsible in damages to the owner of any property injured or destroyed by fire communicated, directly or indirectly, by locomotive engines in use upon its railroad, and which provides that it shall have an insurable interest in the property upon the route of its railroad, and may procure insurance thereon in its own behalf, does not violate the constitution of the United States, as depriving the railroad company of its property without due process of law, as denying to it the equal protection of the laws, or as impairing the obligation of the contract made between the state and the company by its incorporation under general laws imposing no such liability."  The opinion confirms the declaration that the validity of the statute has been sustained by the supreme courts of the most of the states, and that it is a most reasonable and righteous conclusion, and was that of the common law; the

court saying further that "fire, while necessary for many uses of civilized man, is a dangerous, volatile, and destructive element, which often escapes in the form of sparks, capable of being wafted afar through the air, and of destroying any conbustible property on which they fall, and which, when it has once gained headway, can hardly be arrested or controlled. Railroad corporations, in order the better to carry the public object of their creation—the sure and prompt transportation of passeng. rs and goods—have been authorized by statute to use locomotive engines propelled by steam generated by fires lighted upon those engines. ·It is within the authority of -the legislature to make adequate provision for protecting the property of others against loss or injury by sparks from such enginess."

The view was reaffirmed by the supreme court of the United States, in accordance with these views, in a case which went up from Utah. A statute of the state of Utah made "any one who drives a herd of horses, mules, asses, cattle, sheep, goats or swine over the public highway constructed on a hill side, liable for damages for such animals in destroying the banks by rolling rocks into the highways." And on error to the supreme court of the United States, the doctrine of *Railroad Co. v. Mathews* was reaffirmed, the court saying that the decision was based upon the right of the state, in the exercise of its police power, to classify occupations with relation to their peculiar liability to cause injury to property from the damages natural to the implements employed in the business; that there ought to be no controversy about the damages following from such driving; that there was an absolute legal presumption to that effect, resulting from the fact of having driven the herd; and said

that the statute simply created a conclusive presumption of negligence from the peculiar state of facts; and said that it was obviously the province of the state legislature to provide the nature and extent of the legal presumption to be deduced from the given state of facts, and the creation by law of such presumption is, after all, but the illustration of the power to classify; and again declared that the statute was not unconstitutional, on the ground that it deprives persons to which it applies of property without due process of law.

Damages: It is claimed by the plaintiff in error that the damages claimed under the second count, of the sum of $100, as anticipated profits of his business during the fifty days required to reconstruct his barn, and whi·h was allowed to him by the court, was too remote, uncertain, contingent, and speculative to entitle him to recover, the general rule being that, where damages are allowed, the compensation should be equal to the injury. It is an inference from this principle that the amount of the loss which should be reasonably estimated as naturally arising under the destruction is the proper measure of compensatory damages, and the question would be whether the sum of $2 a day, which the defendant averred in his petition was the gain which would naturally be prevented for the period of fifty days during which the barn would be reconstructed and his business restored to its normal condition, appears to be reasonably approximate and certain. It is impossible to estimate with absolute certainty what his injuries would be, but the pleading concedes the truthfulness of his averments as to the period of time, and the amount *per diem* of the profit of his business preceding the fire complained of, and it was referred to the court to estimate what his in-

juries amounted to. We cannot say that the court did not arrive at a correct conclusion, or that the amount claimed and allowed was unreasonable. Gains prevented as well as losses sustained are reasonable in damages if they are such as may naturally be expected to follow the injury. (*Hoge v. Norton*, 22 Kan. 380; *James v. Adams*, 8 W. Va. 568; *Railroad Co. v. Coyle*, 55 Pa. St. 396; *Railroad Co. v. Butler*, 57 Pa. St. 335; *Railroad Co. v. Dale*, 76 Pa. St. 47; *Albert v. Railroad Co.*, 2 Daly, 389; *Moore v. Schultz*, 31 Md. 418; *Lawson v. Price*, 45 Md. 123; *Sturgis v. Frost*, 56 Ga. 188; *Morey v. King*, 49 Vt. 304.)

This principle is asserted in 1 Sedg. Dam. sec. 178, which, after declaring that in cases of entire loss this rule does not apply, states that yet, "if the injury does not extinguish the plaintiff's title, he has a right to compensation for the loss of any use he might rightfully make of the property, subject to the other general principles of the law of damages. The probable aggregate value of such uses—that is, the gain prevented—is therefore a subject for compensation only when the injury leaves the title to the thing injured in the plaintiff; yet, if the injury not only caused the loss of property, but also other proximate loss, further compensation should be given to that effect." The judgment of the lower court is affirmed.

Keaton, J., having presided in the court below, not sitting; Tarsney, J., dissenting; all of the other Justices concurring.