THE TERRITORY OF OKLAHOMA, *ex rel.* EDGAR JONES, County Attorney of Logan County, v. S. N.'HOPKINS, as Territorial Auditor of Oklahoma Territory.

(Filed Nov. 7, 1899.)

1. COUNTY BONDS—*Registration of—Duty of Territorial Auditor.* Section 5 of chapter 7 of the Session Laws of 1895, which authorizes and requires the auditor of this Territory to register and certify to the regularity of the issuance of bonds, involves the performance of a purely ministerial duty and not a judicial function.

2. ORGANIC LAW—*Judicial Power—Ministerial Officer.* Section 9 of the Organic Act provides that all judicial power of this Territory shall be vested in a supreme court, district courts, probate courts and justices of the peace. Hence, the auditor does not possess and cannot possess any judicial power. His duties under the law are simply to pass upon the regularity or irregularity of the issuance of the bonds.

3. MUNICIPALITY—*Term Defined.* A county is a municipality, within the meaning of article 2 of chapter 5 of the Session Laws of 1897.

4. BONDS—*Valid Issue—Judicial Determination.* Where a court of competent jurisdiction has determined the validity of the bonds involved in a proceeding provided by the statute, and has decreed that the bonds were valid obligations and issued in strict conformity with the laws of the Territory, and no objections or exceptions were made to the issuance thereof, and no appeal having been taken therefrom, the decree and judgment of the court is final and conclusive upon all matters put directly in issue, tried and determined in that proceeding.

5. MUNICIPAL INDEBTEDNESS—*Bonds—Maturity.* A bond or other obligation is due or matured whenever the creditor has the right to enforce its payment, or where the debtor has the option to declare the obligation due, and has exercised that privilege. And, the

words "due" and "matured" as used in section 8 of the act of 1895, are manifestly used as synonymous words.

6. SAME—*Maturity of Obligations—Statute Determined.* There is no legal distinction between the intent and purpose of the terms "subject to call by the municipal ty at any time," as provided in article 2, of chapter 5 of the Session Laws of 1897, and "redeemable at the pleasure of the county," as provided in section 8, of chapter 10, of the Statutes of 1890. An obligation payable "on call" is equivalent to the expression "on demand" or "when demanded."

7. SAME—*Right of Municipality to Refund.* Hence, a county or municipality in this Territory has the undoubted right to refund all bonds and other obligations issued under the provisions of chapter 10 of the Statutes of 1890, and under the provisions of article 2, of chapter 5, of the Session Laws of 1897, within the meaning of the provisions of section 8, of the act of 1895, which among other things, provides: "That whenever any bonds shall become due and there is not sufficient money in the treasury to pay the same the proper officers may proceed to issue bonds under the provisions of this act, and apply the proceeds of the sale thereof, in the payment of said matured bonds."

8  STATUTE—*Title of Act—Construction.* There is nothing in our Organic Act or Statute which requires that the title of the act should be expressive of its contents. And hence, "the title of an act of the legislature will be looked to as one of the means of discovering the purport of a doubtful act, but this will only be in cases of ambiguity and uncertainty in the provisions of the act, and, if need be, to aid in its construction, but it will never be held to control the plain and unambiguous meaning of a statute, nor to explain or restrain its positive provisions."    (*Choctaw, Oklahoma & Gulf Ry. v. Alexander*, 7 Okla. 579.)

(Syllabus by the Court.)


*Original Proceeding in Mandamus.*


*Jones & Devereux, H. H. Howard,* and *Fulton & Chambers,* for relator.

No appearance for respondent.

## STATEMENT OF THE CASE.

This is an original proceeding in *mandamus* commenced in this court on May 22, 1899, by the Territory of Oklahoma on the relation of Edgar Jones, county attorney of Logan county, against S. N. Hopkins, as territorial auditor of the Territory of Oklahoma, to compel said auditor to register $80,000 of Logan county refunding bonds, issued by the board of county commissioners on May 9, 1899.

The petition or application for the writ of *mandamus* is as follows:

"Territory of Oklahoma, Logan County, ss.

"In the Supreme Court of the Territory of Oklahoma, June Term, 1899.

"The Territory of Oklahoma on the relation of Edgar Jones, County Attorney of Logan County, O. T., v. S. N. Hopkins, as Territorial Auditor of Oklahoma Territory.

"Motion and Application for Writ of *Mandamus*.

"Comes the Territory of Oklahoma, on the relation of Edgar Jones, county attorney of Logan county, O. T., complaining of S. N. Hopkins as territorial auditor, represents that Edgar Jones is the duly and legally elected, qualified and acting county attorney in and for Logan County, O. T., and that S. N. Hopkins is the duly qualified and acting territorial auditor of the Territory of Oklahoma, and each reside at Guthrie, in Logan county, O. T.; that heretofore, to-wit: on the 9th day of May, 1899, the board of county commissioners of Logan county, O. T., at a regular session of said board, then and there having before said board of county commissioners for consideration the question of refunding certain outstanding bonds of said Logan county, O. T., to-wit: $20,000 of the funding bonds of the said county,

issued under date of September 8, 1891, bearing interest
at the rate of 6 per cent. per annum, payable annually,
and being absolutely due and payable ten years from their
date, but subject to the right of the county to mature
and redeem the same at any time after three years from
date, and $45,000 of funding bonds of said county, dated
January 2, 1893, bearing interest at the rate of 6 per
cent. per annum, payable annually, and being absolutely
due and payable ten years from their date but subject to
the right of the county to mature and redeem the same
at any time after three years from date, which aforesaid
bonds were issued under the provisions of article 2,
chapter 10, of the compiled Statutes of 1890, of this Ter-
ritory; and also $18,000 of the bonds of said county,
issued under the date of May 2, 1898, bearing interest
at the rate of 6 per cent. per annum and becoming abso-
lutely due and payable ten years after their date, subject
to the right of the county to mature and redeem the
same at any time after issuance, and issued under the
provisions of article 2, chapter 5, of the Session Laws of
1897, of said Territory; that upon consideration
by the said board of county commissioners, of
the said subject, the said board considered and
found each and all of the above described bonds
duly and regularly issued under the authority
of law, and that the county had regularly paid
the interest thereon as the same became due, and that
such indebtedness was a valid and legal bonded indebted-
ness owing by the said county; that in view of the high
rate of interest which the said bonds draw, and by re-
funding such outstanding bonds and indebtedness, a
lower rate of interest could be had, that it was for the
best interest of the county to avail itself of the option
therein contained to mature said bonds and redeem the
same, and to that end, to refund them, by issuing re-
funding bonds under the provision of the existing laws
of this Territory, as may be found in chapter 7, of the
Session Laws of 1895, of said Territory, and amended

by chapter 5, of article 2, of the Laws of Oklahoma of
1897, and other lawful authority; that for the purpose of
so refunding and taking up said bonds of the county of
Logan, to the amount of $80,000, to be issued under said
acts and laws aforesaid, which bonds to bear interest at
the rate of 4½ per cent. per annum, payable semi-an-
nually, to be of the denomination of $1,000 each, prin-
cipal and interest of which to be payable in lawful
money of the United States of America, at the fiscal
agency of the Territory of Oklahoma, in the city of New
York, or in the event of the non-existing or discontin-
uance of said agency, then at the Chemical National
Bank, in the city of New York, and which bonds to be
issued in ten equal annual installments or series, the
first series of installments of eight bonds each to become
due and payable twenty years from their date, and one
installment or series of eight bonds to become due and
payable each year thereafter until the whole are paid;
that of the $83,000 of indebtedness so evinced by the
bonds aforesaid as heretofore issued by said Logan
county, $80,000 to be taken up by the issuance and sale
of the refunding bonds therein provided for and $3,000
of which indebtedness is proposed to be paid in cash
by funds now on hand with the treasurer of said county;
that the said county commissioner's court further pro-
vide for the form of a bond, in due and legal form with
coupons attached, proper certificates and all other things,
being in form a valid, binding and legal obligation upon
said county, which when being properly signed, certi-
fied and attested, and when certified by the territorial
auditor, certifying thereto, that such bond has been
legally issued and has been registered in his office and
providing for such certificate thereon on said bond as
required by law, then to be a valid and binding negotia-
ble obligation against said county.

"The said commissioner's court then and there further
ordered that said board of county commissioners and
the county clerk should appear before the district court

of Logan county, O. T., at the district court room at
Guthrie, in said county, on the 22nd day of May, 1899,
at the hour of 10 o'clock, A. M., of said day, then and
there to make proof of the aforesaid indebtedness, and
to procure said court to hear and determine the amount,
validity, and character of said bonded indebtedness, and
to procure said court to sign said bonds pursuant to the
requirements of law, and ordered that notice should be
given by the proper clerk, of the time and place of
said application to such district court, in the manner re-
quired by law, which said notice was thereafter duly
issued and given in the manner and form, and for the
length of time required by law; that thereafter, on the
22nd day of May, 1899, the same being a judicial day
of the regular February term, 1899, of the district court
in and for said Logan county, the Honorable J. H. Bur-
ford, Judge, presiding, came the board of county com-
missioners of Logan county, O. T., to-wit:  O. P. Cooper,
chairman; Chris. Johnson, J. J. Estes, commissioners;
and R. P. Morton, county clerk of said county, and did
make application to the court to hear and determine
the amount of the outstanding indebtedness on bonds of
the county, and to sign such bonds, which by the board
of county commissioners had been determined to be is-
sued for the refunding and payment of such outstanding
bonded indebtedness; they at the same time filed
the notice of said application together with proof
of publication thereof, and the court, after exam-
ining the notice and proof of publication, did
then and there find that due notice had been
given in the manner requird by law of such ap-
plication and hearing, and further found that proof of
such indebtedness was satisfactory, and then and there
determined that the following bonds of said county are
valid, subsisting and legal obligations of said county of
Logan, and were duly issued by said county in conform-
ity of law, and that the said bonded indebtedness, and
each and every part thereof, is of the kind and character

authorized by article 1, of chapter 7, of the Session Laws of Oklahoma, for the year 1895; that such bonds are as follows:

"First. An issuance of county refunding bonds, dated September 8, 1891, amounting to $20,000, absolutely due and payable ten years from date but subject to the right of the county to mature and redeem them at any time after three years from date, bearing interest at the rate of 6 per cent. per annum, payable semi-annually.

"Second. An issuance of $45,000 of funding bonds of the county, dated January 2, 1893, due and payable ten years from date, subject to the option of the county to mature and redeem the same at any time after three years from date, bearing interest at the rate of 6 per cent. per annum, payable annually, and that the above issuance of bonds had been duly and legally made under provision of article 2, of chapter 10, of the Compiled Statutes of the Territory of Oklahoma for the year 1890.

"Third. An issuance of county bonds to the amount of $18,000, bearing date of May 2, 1898, bearing interest at the rate of 6 per cent. per annum, payable semi-annually, to become due and payable ten years from their date, but subject to the option of the county to mature and redeem the same at any time; said last named issuance of bonds made under the authority of chapter 7, of the Laws of 1895, and said court further found that each of the above issues of bonds, and each and every one of said bonds, are legal, valid obligations of the county of Logan, and are of a character to be refunded under the provisions of chapter 5, of the Laws of 1897, and chapter 7, of the Laws of 1895, and other laws governing in such cases, and the court further found that at the time each of the foregoing issues of bonds were made, the total outstanding indebtedness of said county did not exceed 4 per cent. of the then assessed valuation of taxable property of said county for territorial and county taxes, as

shown by the assessment next preceding the date of their
issuance; whereupon, it was ordered by said court, that
the judge of said court, together with the attestation of
the clerk, with the signature and seal of said court, do,
in open court, proceed to sign the bonds of the county of
Logan, to be issued for the purpose of refunding such
$80,000 of the above described bonded indebtedness,
such $80,000 to be in denomination of $1,000 each, bearing
interest at the rate of $4\frac{1}{2}$ per cent. per annum, payable
semi-annually, and to be dated the 22nd day of May,
1899, and maturing in ten equal annual series or install-
ments of eight bonds each, the first to become due on
the 22nd day of May, in the year 1919, and one install-
ment or series of eight bonds to become due each year
thereafter, to and including the year 1929, each of said
bonds having affixed the proper number of interest cou-
pons, which coupons were executed by the fac-simile sig-
nature of the chairman of the board of county commis-
sioners, and the county clerk, lithographed thereon; that
the judge of said court did then and there, in open court,
proceed to, and did, sign each and all of the said refund-
ing bonds, which said signature was then and there at-
tested by the signature of the clerk, under the seal of said
court, and at the same time said bonds were signed by
the chairman of the board of county commissioners, and
the county clerk aforesaid, and the bonds were then and
there delivered in open court, by the judge of said court,
to Ferdinand Ritterbusch, county treasurer of said Logan
county, who thereupon executed his receipt therefor;
that thereafter, upon the same date, the 22nd day of
May, 1899, said refunding-bonds were then and there, by
the proper officer and custodian, duly presented to the
said S. N. Hopkins, territorial auditor of Oklahoma Ter-
ritory, for registration thereof, in his office, and for his
certificate of the regularity of the issuance of the same,
endorsed on the back of each bond, that it was the duty
of said territorial auditor, as such auditor, and so made
his duty by the statutes and laws of this Territory, to

make such said certificate on said bonds on their presentation to him for such purpose, after they had been, as aforesaid, so duly issued, and it was not a matter to be determined by him, or to determine therein for himself, the legality of such issuance by such aforesaid authority, but it was his duty, as territorial auditor, to accept the determination of the commissioner's court, and the said district court to the fact of the legality of such issuance; that it was his duty, and a matter in which he had no discretion, to make such register of such bonds in his office, and to make such certificates of the registry thereof in his office, and the legality of the issuance of said bonds indorsed on the back of each of them; this he has failed, neglected and refused to do, although requested and demanded of him that it be done.

"Plaintiff further represents that said Logan county has negotiated the sale and disposal of said $80,000 of bonds, issued as aforesaid, at the price and sum of $80,-000; that the said county will realize an actual saving in interest of $1\frac{1}{2}$ per cent. per annum on the whole amount of said issuance, and by fixing the maturity date of said indebtedness at such future time, this will enable said county to meet and pay its indebtedness when due; that as such old indebtedness now stands, the taxation would be unreasonably high, if the people of said county were required to pay such debt within the time now limited for it to be paid, and at the same time pay in addition thereto the current expenses of the county; the sale and disposal as aforesaid of said bonds cannot be legally made unless the said territorial auditor will make and indorse his certificate on the back of each bond, the same being the certificate above set out, to the effect that said bonds were regularly issued, and that they have been registered in his office, whereby, by the action of the territorial auditor, the county is deprived of the benefits accruing and to accrue from the issuance of said $80,000 of bonds, and the people of the county are injured in their rights to obtain such benefits; that the holders

of the present outstanding bonds, proposed to be matured and paid, are not injured, nor any contract with them violated by the action of the said county, at the present time, maturing and paying the outstanding bonded indebtedness; that unless the said territorial auditor will forthwith register said bonds, and make said legal certificate thereon, the said Logan county and its citizens. and tax payers, will suffer irreparable injury, and they have no other legal or equitable remedy to protect their rights in the premises except by this proceeding in *mandamus.*

"Wherefore, plaintiff moves and prays the court to grant an alternative writ of *mandamus,* directed as the law requires, and commanding the defendant, as territorial auditor, to appear before this honorable court, at time and place to be named by the court, then and there to register said bonds and make the proper and lawful certificate thereon, or show why he should not be required to do so.

> "EDGAR W. JONES, County Attorney,
>
> "H. H. HOWARD,
>
> "FULTON & CHAMBERS,
>
> > "Attorneys for Plaintiff.

"Territory of Oklahoma, County of Logan, ss.

"Before me, the undersigned authority, this day personally appeared Edgar W. Jones, who, upon his oath. states that he has read and examined the foregoing motion and application for *mandamus* and that the allegations therein contained are within his knowledge and are true.

[SEAL.]    "EDGAR W. JONES.

"Subscribed and sworn to before me this 22nd day of May, 1899.

> "T. A. NEAL, Deputy Clerk District Court."

To this petition or application for a peremptory writ of *mandamus*, the auditor made the following return and answer, to-wit:

"Comes now S. N. Hopkins, territorial auditor of Oklahoma Territory, defendant in the above entitled cause, and returns into this court the writ of *mandamus* heretofore served upon him, and for reply and answer thereto, says:

I.  "It is here admitted that the said issue of bonds of $20,000, of Logan county, O. T., of date September 8, 1891, and the issue of bonds of $45,000, of said county, of date of January 2, 1893, mentioned and set out in said writ, were each and all of them regularly issued and are now valid and binding obligations of said Logan county; that said bonds do draw the rate of interest, and are due and payable as is set out in said writ.

"It is further admitted that beginning with the proceedings of the county commissioner's court of Logan county, O. T., date of May 9, 1899, which proceedings begun and had to secure the issuance of $80,000, refunding bonds, to mature, take up and pay off the aforesaid $65,-000, bonded indebtedness of said county, and other $18,-000, bonded indebtedness of said county, including the final proceedings had in the district court of Logan county, O. T., before the Honorable J. H. Burford, district judge, holding said court, in the finally signing of said $80,000 bonded issue, and turning them over to Ferdinand Ritterbusch, treasurer of Logan county, and the presenting of said bonds to me as territorial auditor, to be registered and certified thereon, were each and all, the said proceedings of said county commissioner's court and of said district court, and said district judge, and said county treasurer, done and performed as it set out in said writ of *mandamus*, and that I refused to register said bonds or to make the required certificate thereon is also admitted.

II. "It is here denied that the issuance of the said $18,000 bonds mentioned in said writ, of date May 2, 1898, were, in the first instance, legally issued. It is denied that under article 2, of chapter 5, of the Acts of 1897, that Logan county could issue the said bonds, because the act applies to municipalities only, and that Logan county was not then and is not now such a municipality as is contemplated in said act.

III. "It is denied that Logan county, O. T., can make the bond issue of $80,000 set out in the writ of *mandamus,* and it is denied that said $80,000 bond issue would be legal, binding and valid obligation against said county if so issued, registered and certified as demanded, for the following reasons:

(1) "That the purpose and effect of the issuance of said bonds would be the funding of outstanding bonds of said county not yet due, but merely subject to the ᐱption of redemption on the part of the county.

(2) "That section 8, of chapter 7, of the Laws of 1895, under which said bonds are proposed to be issued, treats of and provides legislation that is not mentioned or included in the title of said act, chapter 7, in this, that this section, (section 8) provides for the refunding of outstanding bonded indebtedness, while the title of the act provides only for the funding of outstanding warrant indebtedness.

"Wherefore, the defendant, having fully answered in this behalf, he asks judgment on his answer; that the alternative writ heretofore issued and served on him in this cause, be quashed and set aside, and that he be relieved and discharged from certifying and registering said bonds as demanded in said writ, and that he go hence with his costs, for general and special relief."

To the answer of the auditor, the relator interposed the following demurrer:

"Comes now the plaintiff and demurs to the answer of the defendant herein filed for the reason that the said answer does not state facts sufficient to constitute a defense to the writ of *mandamus* heretofore issued in this cause, or to justify the defendant, auditor, in refusing to register and certify said bonds."

Upon these issues and the oral argument and briefs of the relator, the cause was submited to this court. No argument having been made on behalf of the respondent, and no briefs filed.

Opinion of the court by

HAINER, J.: It appears from the answer of the respondent herein, that no objection is made to the regularity of the issuance of the bonds involved in this proceeding. But, the refusal of the auditor to register and to certify to the regularity of the issuance of the bonds, as appears from his answer, is based upon the following grounds: (1) That under article 2, chapter 25, of the Session Laws of 1897, the county had no authority to issue the bonds because the act applies to municipalities only, and that Logan county was not then and is not now a municipality, as was contemplated in said act. (2) That the purpose and effect of the issuance of said bonds would be the refunding of the outstanding bonds of said county not yet due, but merely subject to the option of redemption on the part of the county. (3) That section 8, chapter 7, of the Session Laws of 1895, under which said bonds have been issued, in the title of the act provides for the funding of outstanding warrant indebtedness, and does not provide for the refunding of outstanding bonded indebtedness.

—10

These reasons assigned by the respondent for refusing to register and certify to the regularity of the issuance of the bonds are wholly insufficient.

Section 5 of chapter 7 of the Session Laws of 1895, which authorizes and requires the auditor to register and certify to the regularity of the issuance of bonds, reads as follows:

"A record shall be kept by the auditor for all territorial bonds issued under this act, and by the different county clerks for the other bonds, showing the date, number and amount thereof, to whom and on what account issued, and when the same become due, and all bonds issued under the provisions of this act shall be submitted to the auditor of the Territory and he shall register the same in his office and shall certify to the regularity of the issue of the same on the back of each bond. Upon the registration of such bonds as aforesaid, the auditor shall certify the fact to the clerk of the municipality or district issuing the bonds, whose duty it shall be to enter the same upon the proper records of said municipality, and the bonds themselves shall be returned to the treasurer of said municipality."

The duties imposed upon the auditor by the provisions of the statute involve the performance of a purely ministerial duty and not a judicial function. The auditor of this Territory does not possess and cannot possess any judicial power. Neither could the legislature confer any judicial power upon the auditor or any other executive or ministerial officer in this Territory. Section 9 of the Organic Act, expressly provides that all judicial power in this Territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace. And, hence, the auditor has no power or auth-

ority to pass upon or even question the validity of the bonds involved in this action.  His duties are simply to pass' upon the regularity or irregularity of the issuance of the bonds.  And, it being admitted by the auditor that the bonds in question were regularly issued, it was and is his duty to register them and certify to the regularity of their issuance.

It is first asserted by the respondent that the issuance of $18,000 of bonds mentioned in the writ of the relator is illegal, for the reason that under article 2, of chapter 5, of the Session Laws of 1897, is applicable only to municipalities, and that Logan county is not a municipality as contemplated in said act.

Judge Dillon defines a municipal corporation to be in its strict and proper sense a body politic and corporate, established by law to assist in the civil government of the country, but, chiefly, to regulate and administer the local or internal affairs of a city, town or district which is incorporated.    (1 Dillon on Municipal Corporation, sec. 19.)

Abbott, in his Law Dictionary, defines a municipal corporation as embracing that class of corporations which are created to administer local government subordinate to the general sovereignty of the state or kingdom, which includes cities, towns, incorporated villages, boroughs, and other forms of public corporations.

In *Mayor of Nashville v. Ray*, 19 Wallace 475, the supreme court of the United States has declared that a municipal corporation is a subordinate branch of the domestic government of a state.

In *Board of County Commissioners of Greer County v. Watson,* 7 Okla. 174, Chief Justice Burford defines a county to be, "an involuntary, political and civil division of the Territory, created by the statute to aid in the administration of governmental affairs, and possessed of a portion of the sovereignty."

A county is defined, in section 1, of article I, of chapter 21, of the Statutes of 1893, as follows: "That each organized county within this Territory shall be a body corporate and politic."

From these definitions we are clearly of the opinion that Logan county is a municipality within the meaning of said act.

The second contention of the respondent is that the purpose and effect of the issuance of said bonds would be the refunding of the outstanding bonds of said county not yet due, but merely subject to the option of redemption on the part of the county. The bonds involved in this action were issued under section 8, of chapter 7, of the Session Laws of 1895, which provides as follows:

"Whenever any bonds shall become due, and there is not sufficient money in the treasury to pay the same, the proper officers may proceed to issue bonds under the provisions of this act, and apply the proceeds of the sale thereof in payment of said matured bonds. The procedure in such cases shall be the same as that prescribed in the case of refunding warrant indebtedness."

Section 3, of said act, provides the mode and manner of the issuance of the bonds. And said section, among other things, provides that the municipality shall proceed before the district court of the county and make

a showing and ask the court to hear and determine the amount of the outstanding indebtedness of said municipality, and to sign the bonds to be issued in payment thereof.

It is admitted by the pleadings in this case that the proceedings of the district court were regular in all respects.

The court having determined the validity of the bonds involved in this proceeding, and having decreed that they are valid obligations and issued in strict conformity with the laws of this Territory, and no objections or exceptions having been made to the issuance thereof, and no appeal having been taken therefrom, the decree and judgment of the court is, therefore, final and conclusive upon all matters put directly in issue, tried and determined in that proceeding. This doctrine has been clearly enunciated and uniformly upheld by the decisions of the supreme court of the United States.

In *Southern Pacific Railway Company v. United States*, 168 U. S. 24, Mr. Justice Harlan, in a very exhaustive and learned opinion, announces the following rule:

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This very rule is demanded by the very object for which civil suits

have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essesntial to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them."

Among the cases in this court that illustrate the general rule are: *Hopkins v. Lee*, 19 U. S. 6 Wheat. 109; *Smith v. Kernochen*, 48 U. S. 7 Howard 198; *Thompson v. Roberts*, 65 U. S. 24 Howard 233; *Washington, A. & G. S. P. Ry. Co. v. Sickles*, 24 Howard 333; *Russell v. Place*, 94 U. S. 606; *Cromwell v. Sac County*, 94 U. S. 351; *Campbell .v. Rankin*, 99 U. S. 261; *Mason Lbr. Co. v. Buchel*, 101 U. S. 636; *Bissell v. Spring Valley Township*, 124 U. S. 225; *Johnson Co. v. Wharton* 152 U. S. 253.

In *Cromwell v. Sac County*, it was held that a judgment upon the merits constitutes an absolute bar to a subsequent suit upon the same cause of action in respect to every matter offered and received in evidence, or which might have been offered to sustain or defeat the claim in controversy.

In *Russell v. Place*, the court said that: "A judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties."

In *Bissell v. Spring Valley Township*, it was held that an adjudication, in an action on coupons of municipal bonds, sustaining the defense that the municipality never issued the bonds, and that the bonds were not its

legal obligations, was conclusive in a subsequent action brought by the same party on different coupons of the same bonds.

It appears from the petition of the relator that $65,-000 of the bonds which were refunded were issued under the provisions of article 2, of chapter 10, of the Statutes of 1890, of this Territory, in two installments as follows: $20,000 being issued on September 8, 1891, bearing interest at the rate of 6 per cent. per annum, payable annually, and being absolutely due, and payable ten years from their date, but subject to the right of the county to mature and redeem the same at any time after three years from date; and $45,000 dated January 2, 1893, bearing interest at the rate of 6 per cent. per annum, payable annually, and being absolutely due and payable ten years from their date, subject to the right of the county to mature and redeem the same at any time after three years from date.

Section 8 of the Act of 1890 reads as follows:

"Such bonds shall be redeemable at the pleasure of the county at any time after the expiration of three years from the date of their issue, and must be redeemed on or before the expiration of ten years from the date of their issuance."

It will thus be seen that the right and power of said county to mature and redeem $65,000 of these bonds, after the expiration of three years from the date of their issue, is expressly conferred by said act. It is a right that the county can exercise at its pleasure, and, no subsequent legislation could deprive the county of this right which entered into the contract and became a part thereof, at the date of the issuance of the bonds.

To hold that the county has no power to exercise this right would be, in effect, to impair the obligation of the contract, which is forbidden by the federal constitution, and therefore, would be void.

It is also asserted by the respondent that the bonds sought to be refunded are not "due" and "matured" until the expiration of the time for which they were issued, within the meaning of section 8 of the act of 1895.

Section 8 of the act of 1895, among other things, provides: "That whenever any bond shall become due, and there is not sufficient money in the treasury to pay the same, the proper officers may proceed to issue bonds under the provisions of this act, and apply the proceeds of the sale thereof, in the payment of said matured bonds."

The language of the  statute expressly provides that the bonds shall be redeemable at the pleasure of the county at any time after the expiration of three years from the date of their issue, and hence, the obligation would be "due and matured" whenever the county by virtue of said statute had a right to redeem them.  The county was compelled to redeem them on or before the expiration of ten years from the date of their issue.  The statute conferred this right and privilege solely for the benefit of the county.

A bond or other obligation is due or matured whenever the creditor has the right to enforce its payment, or where the debtor has the option to declare the obligation due and has exercised that privilege.  The words "due" and "matured" are manifestly used as synonymous words.

It further appears that $18,000 of the bonds were issued on May 2, 1898, bearing interest at the rate of 6 per cent. per annum, becoming absolutely due and payable ten years after their date, subject to the right of the county to mature and redeem the same at any time after their issuance.

These bonds were issued under the provisions of article 2 of chapter 5, of the Session Laws of 1897, which, among other things, contains the following provisions:

"Such bonds shall be payable in lawful money of the United States  *  *  and shall run for such a time, not exceeding twenty years, as may be agreed upon between the judgment creditors of the municipality, and shall be subject to call by the municipality for payment at any time."

It further appears from the petition of the relator that it has made a call for the payment of these bonds on July 1, 1899.

We can perceive no legal distinction between the intent and purpose of the terms, "subject to call by the municipality at any time," and "redeemable at the pleasure of the county." An obligation payable "on call" is equivalent to the expression "on demand" or "when demanded."

In volume 5 of the American and English Encyclopaedia of Law, second edition, page 107, it is stated:

"There is no legal distinction between an obligation payable on demand, or when demanded, and one payable on call, or when called for. In each case the debt is payable immediately and the obligors are bound to pay interest from the date of the obligation."

We are, therefore, clearly of the opinion that all these bonds were "due and matured" within the meaning of section 8 of the act of 1895.

The only remaining contention to be considered is, that the title of the act of 1895, does not refer to the refunding of outstanding bonded indebtedness, but only to "outstanding warrant indebtedness."    There is no merit in this contention.    There is nothing in our Organic Act or statute which requires that the title of the act should be expressive of its contents.    In the absence of any such provision either in the Organic Law or other statutory provision, it is not essential for the purpose of upholding the validity of the law.    And hence the title is only to be referred to in case of ambiguity arising out of the body of the law.

In *Choctaw, Oklahoma and Gulf Ry. v. Alexander*, 7 Okla. 579, this court held that:

"The title of an act of the legislature will be looked to as one of the means of discovering the purport of a doubtful act, but this will only be in cases of ambiguity and uncertainty in the provisions of the act, and, if need be, to aid in its construction, but it will never be held to control the plain and unambiguous meaning of a statute, nor to explain or restrain its positive provisions."

In *Hadden v. Barney*, 5 Wallace 107, Mr. Justice Field, in delivering the opinion of the supreme court of the United States, said:

"The title of an act furnishes little aid in the construction of its provisions.    Originally in the English courts the title was held to be no part of the act.    'No more,' says Lord Holt, 'than a title of a book is part

of the book.'—(*Mills v. Wilkins*, 6 Mod. 62.) It was generally framed by the clerk of the house of parliament, where the act originated, and was intended only as a means of convenient reference. At the present day the title constitutes a part of the act, but it is still considered only as a formal part; it cannot be used to extend or to restrain any positive provisions contained in the body of the act. It is only when the meaning of these is doubtful that resort may be had to the title, and even then it has little weight. It is seldom the subject of special consideration by the legislatures."

In this case there is no doubt that the legislature intended to provide for and regulate the issuance of refunding bonds in certain cases, hence there is no occasion to refer to the title of the act for aid in its explanation.

This disposes of all the questions raised by the pleadings as well as the matters urged and presented for our consideration by the briefs of the counsel for the relator.

It is, therefore, ordered, considered and adjudged that the peremptory writ of *mandamus* be, and the same is, hereby granted as prayed for in the petition of the relator, at the cost of the respondent.

All of the Justices concurring.